UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| HOWARD FRYE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-04187-SLD-JEH |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| STATE OF ILLINOIS, and KUL B. SOOD, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Wexford Health Sources, Inc.'s ("Wexford") motion to dismiss Count II of Plaintiff Howard Frye's Complaint, ECF No. 13. For the following reasons, the motion is GRANTED.

## BACKGROUND[1]

In September 2014, Frye was incarcerated at Hill Correctional Center, a prison operated by the Illinois Department of Corrections ("IDOC") in Galesburg, Illinois. During this month, he developed a perirectal abscess on his right buttock. The condition was painful, and Frye complained to Defendant Sood, a doctor employed by Wexford. Wexford contracts with IDOC to provide medical care to inmates.

Sood provided Frye with a drug, Bactrim, to treat the infection. However, he did not provide further treatment, like draining the abscess. Frye alleges that this was because he was scheduled to be released from prison in October of 2014, the next month. Frye was duly released

---

[1] In a motion to dismiss, all well-pleaded allegations in the complaint are taken as true and viewed in the light most favorable to the plaintiff. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). Accordingly, the material set forth here is, unless otherwise noted, based on allegations in the Complaint, ECF No. 1.

on October 10, and went to Trinity Hospital in Moline, Illinois for further treatment. The hospital admitted him and drained the abscess. Frye had to return to the hospital "throughout" October to receive a course of intravenous antibiotics to treat the abscess and the infection that had caused it.

Frye sued Wexford, Sood, and the State of Illinois on September 12, 2016, ECF No. 1. He alleged (I) that Sood was deliberately indifferent to his serious medical need in violation of 42 U.S.C. § 1983 and the Eighth Amendment, Compl. 2–3; (II) that Wexford promulgated a policy or practice of denying medical care to inmates like himself in violation of 42 U.S.C. § 1983 and the Eighth Amendment, Compl. 3–4; and (III) sought an order requiring the State of Illinois to indemnify Wexford and Sood for their liability, *id.* at 4. On January 31, 2017, Wexford moved to dismiss Count II.

## DISCUSSION

### I. Legal Standard on a Motion to Dismiss

In reviewing a motion to dismiss, a court must accept as true all well-pleaded facts in the complaint, and draw all reasonable inferences in favor of the plaintiff. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). A court will dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In determining whether such a claim has been stated, a court should first identify pleadings that "because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). It should then take the remaining, well-pleaded factual allegations, "assume their veracity[,] and . . . determine whether they plausibly give rise to an entitlement to relief." *Id.* This means that a complaint must provide "allegations that raise a right to relief above the speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). The

plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint must also describe its claims in sufficient detail to give a defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in *Bell Atlantic*).

**II.   Analysis**

Wexford argues that allegations against it must be dismissed because Frye has failed to plead a claim that plausibly gives rise to an entitlement to relief. Mem. Supp. Mot. Dismiss 3–7, ECF No. 14. The Court agrees.

42 U.S.C. § 1983 creates civil liability for anyone who "under color of any statute, ordinance, regulation, custom, or usage . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Ordinarily, the liberties secured by the Bill of Rights create no positive obligation on behalf of state agents to act or intervene to provide help or medical assistance. *See DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 196 (1989). However, courts have long recognized an exception: when the government incarcerates people, rendering them unable to protect themselves or to provide for their own health, the Eighth Amendment's ban on cruel and unusual punishment prohibits the government from acting with deliberate indifference to serious threats to their health or safety. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Private companies that contract with the government like Wexford, and their employees, can act under color of state law, and have repeatedly been found by courts in this circuit to do so in the context of providing medical services to inmates. *See, e.g.*, *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017); *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).

Municipalities are liable for constitutional harms under § 1983 only if their policy or custom causes the harm, or the harm is caused by someone with final policymaking authority. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)). That is to say that the theory of respondeat superior liability, in which an employer is liable for the torts of his employees, does not apply to constitutional torts committed by municipal agents under § 1983. *Id.* As the law in this circuit stands, the same is true of private companies who contract with state agencies and act under color of law: the companies may only be liable if a policy, custom, or person with final policymaking authority causes the harm. *See Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). *But see Shields*, 746 F.3d at 794–95 (questioning whether it makes sense to shield corporations from respondeat superior liability under § 1983).

Wexford does not contest that it contracted with Illinois, and that as a result, it and Sood acted under color of law in providing treatment to Frye. Rather, Wexford argues, Frye has made only sketchy and conclusory allegations that Wexford itself was responsible for the harm Frye suffered. Mem. Supp. Mot. Dismiss 3–7.

In order to make out a constitutional claim against Wexford for deliberate indifference, Frye must plead that a custom, practice, or person with final policymaking authority caused the harm he alleges, and must plead that policymakers were "'deliberately indifferent as to [the] known or obvious consequences.' In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Thomas*, 604 F.3d at 303 (quoting *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002)) (citation omitted).

In looking at the allegations Frye uses to support his claim against Wexford, the Court first excises those that are merely legal conclusions or elements of the cause of action dressed up as facts. *See Iqbal*, 556 U.S. at 679; *see also McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (employing this method to evaluate a *Monell* claim at the motion to dismiss phase). In this way, the Court jettisons the conclusory assertion that "[e]ach individual Defendant acted willfully and wantonly, maliciously, and with a conscious disregard and deliberate indifference to Plaintiff's rights." Compl. ¶ 15. Expurgated too is the claim that "Wexford encouraged, adopted, and/or recklessly allowed the actions described in this complaint to occur." *Id.* ¶ 28. And gone is: "Defendant Wexford had at the time of the occurrence one or more policies or practices of denying medical care to inmates such as Plaintiff, knowing there was a high likelihood these policies would ultimately lead to injuries such as occurred to Plaintiff. As a result of Wexford's actions, the Plaintiff suffered injuries, as described more fully above." *Id.* ¶ 27. What remains are two numbered paragraphs:

> 11. Dr. Sood provided Plaintiff with Bactrim shortly before his release, but did not drain Plaintiff's abscess because he was scheduled to be discharged in October 2014.
> . . . .
> 29. Defendant Wexford's policies to deny inmates proper medical treatment was [sic] predicated upon the private company's goal to maximize profit over patient care.

Compl. 2–4. Frye argues that these assertions, and particularly the allegation that Wexford seeks to minimize costs, are sufficient to plead a deliberate indifference claim under *Monell*. Resp. Mot. Dismiss 3–11, ECF No. 16. Not so. In order to state a facially plausible deliberate indifference claim under *Monell*, these factual allegations must allow the Court to draw the reasonable inference that Wexford maintained a policy or practice of providing insufficient medical treatment to inmates who were leaving prison shortly that rose to the level of deliberate

indifference to a serious medical need. Frye needs to allege enough "by way of factual content to 'nudg[e]' his claim of purposeful discrimination 'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570).

But all Frye is alleging is that on this occasion, Sood failed appropriately to treat a medical condition that later required more extensive treatment, and (interpreting generously the opaque language of the Complaint's Paragraph 11) told Frye that he, Sood, was not providing further treatment because Frye would soon be released. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003) ("When a plaintiff chooses to challenge a municipality's unconstitutional policy by establishing a widespread practice, proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference."). Frye does not allege that Sood told him this refusal was part of a policy. Frye does not point to a written policy. And he alleges no other incidents or behavior on Wexford's part that would lead to an inference that Sood's behavior was the consequence of a custom or policy that "although not codified in written law or regulation, is so permanent and well-settled that it has the force of law." *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 912 (7th Cir. 1999). Frye simply proceeds from his allegation that Sood prescribed him Bactrim and nothing more to conclude that the behavior was part of a widespread policy of inadequately treating prisoners who were about to be released.

The argument that Wexford seeks to cut costs falls flat, because Frye alleges nothing suggesting that Wexford's attention to its bottom line is expressed in policies that cause the kind

of harm he claims. In short, Frye alleges no facts that permit the Court to infer that the treatment Sood provided was the result of a policy, custom, or person with final policymaking authority, as he must to make out a *Monell* claim. *See Shields*, 746 F.3d at 796 (holding that Wexford's direction of a plaintiff to the wrong doctor, followed by failure to discipline a doctor who provided faulty medical assistance, did not result in liability under *Monell*).

## CONCLUSION

Accordingly, Defendant Wexford's motion to dismiss Count II of the Complaint as to itself, ECF No. 13, is GRANTED.

Entered this 19th day of September, 2017.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
