IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| HOWARD FRYE,<br>    Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., STATE OF ILLINOIS and KUL B. SOOD<br>    Defendants. | Case No. 4:16-cv-04187-JEH |

**Order**

Now before the Court are the Defendant Dr. Kul Sood's Motion for Summary Judgment and Supplemental Motion for Summary Judgment (Doc. 41, 60). The Plaintiff Howard Frye filed a response to both the motions, and the Defendant replied (Doc. 62, 63). For the reasons stated herein, the Court GRANTS the Defendant's Motion for Summary Judgment and Supplemental Motion for Summary Judgment.

**I**

**A**

The Plaintiff filed a Complaint alleging the Defendant was deliberately indifferent to his medical needs (Doc. 1 at ECF p.3). Specifically, while the Plaintiff was an inmate with the Illinois Department of Corrections ("IDOC"), he sought medical treatment for an infection on his buttock (Doc. 1 at ECF p.2). The Defendant, medical director of the prison at the time, along with a nurse, treated the Plaintiff using the antibiotic Bactrim (Doc. 1 at ECF p.2). The Plaintiff claims that not only was the treatment ineffective under the circumstances, but Dr. Sood's

1

choice of treatment was deliberately indifferent because it was motivated by the fact that the Plaintiff was due to be released in two days (Doc. 1 at ECF p.3).

After the conclusion of discovery, the Defendant filed a Motion for Summary Judgment arguing that the care provided to the Plaintiff was appropriate based on the Plaintiff's presentation of his condition (Doc. 41 at ECF p.2). In the Plaintiff's response to the motion, the Plaintiff attached the affidavit of Dr. Fierce who treated him at the emergency room after his release from prison (Doc. 41-5). In that affidavit, Dr. Fierce provided an expert opinion positing that the treatment of the Defendant was deficient (Doc. 41-5).

The Defendant then moved to strike this affidavit, noting it was not properly disclosed under the Federal Rules of Civil Procedure (Doc. 52). This Court agreed with the Defendant but gave leave to properly disclose Dr. Fierce as an expert and subsequently an opportunity for him to be deposed. After the deposition, the Defendant filed a Supplemental Motion arguing that the Plaintiff still could not establish Dr. Sood provided inadequate care (Doc. 62).

**B**

Beginning in September of 2014, the Plaintiff made daily oral requests for medical attention until his visit with Dr. Sood on September 13, 2014 (Doc. 41 at ECF p.3).

At that September 13 visit, as well as one on September 16, 2014, Dr. Sood evaluated the Plaintiff, but he made no complaints regarding his buttock (Doc. 41 at ECF p.3). On September 29, the Plaintiff went in for a follow-up regarding an eye infection, but again he made no complaints about his buttock (Doc. 41 at ECF p.3).

On October 8, 2014, the Plaintiff for the first time had the infection on his buttock evaluated by the medical staff (Doc. 41 at ECF p.4)[1]. The Plaintiff informed the nurse that the infection which he described as a boil had been present for seven days, continued to hurt, and had not drained (Doc. 41 at ECF p.4). The nurse measured the boil on his buttock and recorded that it was two centimeters, red hot, and surrounded by small blisters (Doc. 41 at ECF p.4). The nurse also noted that she observed no drainage from the boil but recorded "small amount yellow clear on 4 x 4 – area covered with small yellow blisters" (Doc. 43 at ECF p.2). She further recorded "Possible MRSA issues" during the appointment (Doc. 43 at ECF p.8). However, none of the Plaintiff's fluids were tested to confirm this suspicion (Doc. 43 at ECF p.7).

She also twice noted in the record that the Plaintiff would be released in two days, and she testified that this information came from the Plaintiff (Doc. 43 at ECF p.3). She testified that she informed the Plaintiff to apply a warm washcloth twice a day and explained how to keep the area clean and dry (Doc. 41 at ECF p.5). She also testified that she told him not to squeeze it and explained that if the infection worsened in any way he should report back to healthcare (Doc. 41 at ECF p.5).

The Plaintiff, however, denies the nurse gave him these instructions (Doc. 43 at ECF p.3). The Plaintiff believes he also had a fever during his appointment (Doc. 43 at ECF p.7). Plaintiff also believes that by the time of the visit he already had an abscess, which is more serious than a boil (Doc. 43 at ECF p.3).

The parties also disagree on whether Dr. Sood was present at the appointment. Plaintiff is certain Dr. Sood was present in the room and told him he

---

[1] There is a dispute regarding whether Dr. Sood was personally present when treating the Plaintiff or, instead, the Defendant treated the Plaintiff over the phone through the prison nurse. Whether the Defendant saw the Plaintiff personally or relied on information relayed to him by the nurse is immaterial to the analysis in this case, but the Court will assume the Plaintiff's testimony that Dr. Sood treated him personally is true for purposes of this Order.

did not want to be liable for an infection after the Plaintiff's release (Doc. 43 at ECF p.3). But the nurse states she communicated with Dr. Sood verbally over the phone (Doc. 41 at ECF p.4). Dr. Sood testified that he is unsure if he was present (Doc. 43 at ECF p.3). And in Dr. Sood's deposition testimony he believed the nurse's notes said the abscess was four by four centimeters but doesn't have any personal memory of the size of it (Doc. 43 at ECF p.2). Regardless, Dr. Sood ordered prescriptions for Tylenol and Bactrim DS to address the Plaintiff's infection (Doc. 43 at ECF p.3).

Dr. Sood has experience treating boils and abscesses and is qualified to drain them if it is required (Doc. 41 at ECF p.6). Dr. Sood believes the boil became larger and more painful after the visit and expanded or developed in the days after his visit to the medical unit (Doc. 41 at ECF p.5). Dr. Sood also testified that a two-centimeter boil is normally treated with oral antibiotic and warm compresses (Doc. 41 at ECF p.5). Dr. Sood stated that if antibiotics do not work then after initial treatment the boil should be drained (Doc. 41 at ECF p.5).

The Plaintiff disagrees and claims that draining an abscess is a part of initial treatment, and his abscess should have been lanced (Doc. 43 at ECF p.4). The Plaintiff further states that Dr. Sood told him the abscess was so bad he didn't want to lance it and be responsible for a possible infection (Doc. 43 at ECF p.6). Dr. Sood, however, stated that the Plaintiff's anticipated release on October 10th did not affect his treatment choice (Doc. 41 at ECF p.5).

After the appointment, the Plaintiff squeezed the boil in an effort to pop it. (Doc. 41 at ECF p.6). The Plaintiff also testified that the pain on his buttock continued to worsen, especially when using the bathroom (Doc. 43 at ECF p.5). Despite this, Plaintiff made no requests for medical care following his October 8 appointment (Doc. 41 at ECF p.6). Plaintiff claims that he did not seek follow up care because he trusted Dr. Sood's judgment and believed Dr. Sood would not

drain the abscess (Doc. 43 at ECF p.4). Nonetheless after Plaintiff was discharged from IDOC, he had his son drive him to Trinity Hospital where his abscess was drained in the emergency room (Doc. 43 at ECF p.8).

The nurse practitioner in the emergency room recorded that the abscess was a "pointing and fluctuating mass" surrounded by redness and hardness that extended up the buttock (Doc. 43 at ECF p.8). The abscess was measured to be seven centimeters long and three centimeters wide, and there was a significant amount of drainage (Doc. 43 at ECF p.8).

The Plaintiff was put on an IV drip to kill the staphylococcus bacteria that was cultured from the wound (Doc. 43 at ECF p.9). The Plaintiff later checked out of the hospital on October 10 but was readmitted a day later (Doc. 43 at ECF p.9). After the treatment ended, the Plaintiff received daily outpatient care using the IV drip (Doc. 43 at ECF p.9).

The Plaintiff was treated by a number of doctors who are witness to his time in Trinity Hospital including Dr. Nathan Fierce (Doc. 52-1). Dr. Fierce is a physician employed by UnityPoint Health who admitted the Plaintiff for further treatment and evaluated his condition (Doc. 47). Dr. Fierce has been deposed by both sides as a medical expert (Doc. 62 at ECF p.1).

In Dr. Fierce's affidavit, he states that the treatment of Bactrim DS to the abscess without drainage while the Plaintiff was incarcerated was not adequate treatment (Doc. 62 at ECF p.2). However, Dr. Fierce later testified that in his opinion "most non-surgeon providers are going to treat somebody that shows up with an abscess with an oral antibiotic, and then see if they respond. Most of the time, they don't. They are going to send them on to a surgeon" (Doc. 62 at ECF p.3).

Additionally, Dr. Fierce stated that "…typically, if you have a patient that is in a hospital or incarcerated using Bactrim type or a sulfa antibiotic is what you

would start treatment with with an abscess" (Doc. 63 at ECF p.2). He then went on to testify that his statement in the affidavit that Dr. Sood's treatment was inadequate was based on the presentation of the plaintiff on October 10 in the emergency room (Doc. 63 at ECF p.2).

When asked about the probability of the size of the infection growing from two centimeters to seven centimeters in two days, Dr. Fierce stated, "Yes. It could progress. It's very likely it would be very small two days before that" (Doc. 63 at ECF p.2). He also stated that regardless of the size "…the proper thing is put him on antibiotics. And if you think he has an abscess – which reading this, it doesn't really say he has an abscess" (Doc. 63 at ECF p.2).

Dr. Fierce was then asked if he was able to tell whether there was an abscess or a boil when Plaintiff first presented to IDOC medical staff (Doc. 60-1 at ECF p.9). Dr. Fierce stated, "He describes the area around a boil. But then he calls the boil a blister. And it looks like he says there is clear drainage coming from. I got – I mean, from these notes, I have a hard time saying that he describes a distinct abscess" (Doc. 60-1 at ECF p.9).

## II

### A

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Ruiz-Rivera v. Moyer*, 70 F.3d 498, 500-01 (7th Cir. 1995).

The moving party has the burden of proving proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing

party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracie v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. The Eighth Amendment prohibits punishments that are incompatible with "evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). "The Eighth Amendment safeguards the prisoner against a lack of medical care that may result in pain and suffering which no one suggests would serve any penological purpose." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (internal quotations and footnote omitted). "Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."); *Walker v. Benjamin*, 293 F.3d 1030, 1036-37 (7th Cir. 2002)

(noting that the Eighth Amendment applies to the states through the Fourteenth Amendment).

The deliberate indifference standard requires an inmate to clear a high threshold in order to maintain a claim for cruel and unusual punishment under the Eighth Amendment. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). "In order to prevail on a deliberate indifference claim, a plaintiff must show (1) that his condition was 'objectively, sufficiently serious' and (2) that the 'prison officials acted with a sufficiently culpable state of mind." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) (same).

"A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Lee*, 533 F.3d at 509 (quoting *Greeno*, 414 F.3d at 653). "With respect to the culpable state of mind, negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994) ("We hold that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.").

In other words,

> [d]eliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts. And although deliberate means more than negligent, it is something less than purposeful. The point between these two poles lies where the official knows of and disregards an excessive risk to inmate health or safety or where the official is both aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,

8

> and he … draw the inference. A jury can infer deliberate indifference on the basis of a physician's treatment decision when the decision is so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.

*Duckworth*, 532 F.3d at 679 (internal quotations and citations omitted). The standard is a subjective one: Defendant must know of the facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference. *Farmer*, 511 U.S. at 837.

The Seventh Circuit has cautioned, however, that "[a] prisoner need not prove that the prison officials intended, hoped for, or desired the harm transpired. Nor does a prisoner need to show that he was literally ignored. That the prisoner received some treatment does not foreclose his deliberate indifference claim if the treatment received was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Arnett*, 658 F.3d at 751 (internal citations and quotations omitted).

## B

There is no genuine dispute of material fact regarding the adequacy of care provided to the Plaintiff. As previously stated, a claim of deliberate indifference to a medical need must meet a high threshold. The case law is clear that establishing ordinary negligence, or medical malpractice is not enough. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). Plaintiff must show Defendant's treatment is "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)).

On October 8, 2014, the Plaintiff met for the first and only time with Dr. Sood regarding his infection. While the Plaintiff claims that there was already an abscess

at this time, there is no medical evidence to substantiate such a claim. It is simply Plaintiff's non-medical hunch, but inferences must be based on more than speculation, hunches, or intuitions to defeat summary judgment. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Further, Dr. Fierce stated that based on the records "… it doesn't really say he has an abscess" (Doc. 63 at ECF p.2).

It is in dispute whether the infection on the Plaintiff's buttock was 2 centimeters or a 4 x 4-centimeter area of blisters. Even when drawing all inferences in favor of the Plaintiff, Dr. Sood has experience treating boils and abscesses and decided Bactrim was the appropriate course of treatment. Additionally, Plaintiff's own medical expert agreed with Dr. Sood's reasoning. Although Dr. Fierce first described Dr. Sood's treatment as inadequate, this conclusion was based on Plaintiff's presentation in the *emergency room*, not the Plaintiff's presentation to Dr. Sood two days earlier. When asked about treatment for the initial presentation, Dr. Fierce stated "…the proper thing is put him on antibiotics" and "…typically, if you have a patient that is in a hospital or incarcerated using Bactrim type or a sulfa antibiotic is what you would start treatment with with an abscess" (Doc. 63 at ECF p.2).

There is no dispute that after the October 8 appointment, Plaintiff never complained about the infection to medical staff or saw Dr. Sood for treatment again. There is also no dispute that that the condition worsened within the two days after the appointment. Indeed, Dr. Fierce also testified that it is very likely that the infection grew within those two days.

Dr. Fierce's undisputed testimony demonstrates that the treatment received by the Plaintiff was not only within the accepted professional standards of the medical community but the correct course of treatment based on the presentation on October 10.

Even accepting the Plaintiff's claims that Dr. Sood's treatment was motivated by his impending release, there is no medical evidence that Dr. Sood provided anything but "proper" treatment on October 8 (Doc. 63 at ECF p.2). If a doctor chooses the correct course of treatment, even if that choice was made for an inappropriate reason, the course of treatment remains correct. The Plaintiff has therefore failed to meet the threshold of deliberate indifference to a medical need because there is no genuine issue of material fact regarding the adequacy of the treatment, and the Defendant is therefore entitled to a judgment as a matter of law.

### III

For the foregoing reasons, the Defendant's Motions for Summary Judgment and Supplemental Motion for Summary Judgment are GRANTED (Doc. 41, 60). The Clerk of Court is directed to enter judgment as follows: "Judgment is entered in favor of Defendant, Kul B. Sood and against Plaintiff, Howard Frye."

The matter is now terminated.

*It is so ordered.*

Entered on July 20, 2020.

s/Jonathan Hawley
U.S. MAGISTRATE JUDGE